E. H. SUNDERLAND, Respondent, v. HACKNEY MANUFACTURING COMPANY, Appellant.

Kansas City Court of Appeals, December 6, 1915.

1. **CONTRACTS: Collateral Agreement: Evidence: Contradictions.** Evidence of a collateral agreement may be heard where there is a written contract; but it must be consistent with the writing. A verbal additional warranty to that contained in a written contract of sale is not consistent with the written contract.

2. **WARRANTY: Evidence: Parol.** A written contract of sale, silent as to a warranty, cannot be altered by parol evidence that there was a warranty. And where such contract contains a warranty, no other warranty may be shown by parol.

Appeal from Chariton Circuit Court.—*Hon. Fred Lamb,* Judge.

REVERSED AND REMANDED.

*Roy W. Rucker* and *Williams, Hunter & Guffin* for appellant.

*Joseph Fontron* and *Jones & Conkling* for respondent.

ELLISON, P. J.—Defendant is a corporation resident of the State of Minnesota and on the 3rd of May, 1913, it sold to plaintiff an "Auto Plow Tractor," with attachments at the total cash price of $1875. The contract of sale with warranty was in writing. Plaintiff tried the plow on his farm and claimed that it failed to perform as warranted and that it was thereby worthless. He brought this action on the warranty alleging his damages at the price he paid and freight. He recovered judgment in the circuit court for $875.

There was a plea by defendant to jurisdiction of the person. This was based on the fact that the summons was served on one of defendant's repair men, who came into the state to plaintiff's farm to assist in finding out the cause of plaintiff's complaints of the plow and in putting it in such order that it would work. Plaintiff conceived the idea of obtaining jurisdiction over defendant by serving this employee with a summons. The difficulty with defendant's position, at this time, is that it has waived the point by a general appearance. After its plea to jurisdiction was overruled it applied for and obtained a change of venue from the court where the action was instituted to another circuit. This was such an appearance as waived the question of jurisdiction. [Julian v. Star Co., 209 Mo. 95; Houston v. Pulitzer Pub. Co., 249 Mo. 355.]

Defendant insists that the contract is a Minnesota contract and this, plaintiff denies, asserting that it is a Missouri contract because the latter State was the place of performance. There is nothing to be gained by following out this disagreement, for, besides the fact that the law of the two States on the controversy between the parties, is substantially the same, we have arrived at a conclusion as to the proper disposition of the case on other grounds.

The petition alleges that the contract contained a warranty whereby ''defendant warranted and agreed that said auto plow should pull and would pull two fourteen-inch breaker bottoms six inches deep without overloading engine to said plow.'' At another part of the petition plaintiff alleges that in a conversation with defendant's agent before the contract was executed he explained that the soil on his farm was ''gumbo'' and that ''said agent at said time stated to this plaintiff that said plow would do the work called for by the warranties contained in said contract, and said agent at said time warranted to this plaintiff that said auto plow machine would pull two fourteen-inch breaker bottoms six inches deep in plaintiff's land without overloading the engine to said machine.''

The contract introduced at the trial failed to sustain the petition and defendant's demurrer to the evidence should have been granted. The contract under the heading of ''Warranty,'' in bold type, contains the following: ''The Hackney Auto Plow Tractor is purchased and sold subject to the following warranty and agreement: That the Tractor is warranted against defects in workmanship and material.'' The warranty and breach thus alleged in the petition relate to a totally different matter.

But it will be noted that the petition went beyond the written contract and alleged a verbal warranty

made by defendant's agent just prior to the execution of the contract. It is fundamental law that all prior and contemporaneous conversations are merged into the written contract and that the contract, as written, cannot be added to or subtracted from by verbal testimony. In a recent case our Supreme Court said that "When men sit down to put a contract in writing and do so, the presumption is they write all there is of it. All prior or contemporaneous verbal conversations relating to the subject-matter are presumed merged in the writing. The precept to go by is: The spoken word flies; the written word remains." [Beheret v. Myers, 240 Mo. 58, 75, 76; Pearson v. Carson, 69 Mo. 550.]

To allow parol evidence of a verbal warranty when the writing is silent would be to add a distinct provision to the contract; and to permit parol evidence of a different, or additional, warranty from that contained in the writing would be an inexcusable change in the contract. [Jolliffe v. Collins, 21 Mo. 338; Seitz v. Brewers Machine Co., 141 U. S. 510; Conant v. Nat'l Bank, 121 Ind. 323; Zanturjian v. Boornazian, 25 R. I. 151, 155; Detroit Ship Co. v. Comstock, 144 Mich. 516; Frost v. Blanchard, 97 Mass. 155; Bullard v. Brewer, 118 Ga. 918; McCormick Mach. Co. v. Allison, 116 Ga. 445; Battery Co. v. Ry. Co., 138 Iowa, 369; Buchanan v. Laber, 39 Wash. 410; Lower v. Hickman, 80 Ark. 505; Vierling v. Iroquois Furnace Co., 170 Ill. 189; Morgan Smith Co. v. W. P. & S. Co., 221 Pa. 165.] On this subject, it is said in Benjamin on Sales, sec. 621, that: "Where the written sale contains no warranty or expresses the warranty that is given by the vendor, parol evidence is inadmissible to prove the existence of a warranty in the former case, or to extend it in the latter, by inference or implication." In 1 Parsons on Contracts, 589, it is said in reference to the same subject that: "Where the contract of sale is in writing and contains no warranty, then parol evidence is not

admissible to add a warranty." In the absence of fraud, the vendor "may be silent and be safe." Ib. 579.

But plaintiff seeks to avoid the force of this rule of law by the claim that the verbal contract in this case "was a collateral agreement, not contradicting the written contract, but explaining it." There is no branch of the law more liable to abuse, or rather misinterpretation, than that concerning verbal agreements collateral to written contracts. The law permits proof by parol testimony of a collateral agreement, rather as an exception under well-defined limits, but it must be admitted that some of the courts have enlarged the exception so as to entirely destroy the rule. The authorities above cited, while not affirmatively mentioning oral collateral agreements, clearly show that such agreements cannot be allowed to affect a complete written contract.

Where parties have reduced their contract to writing and it is complete on its face, unless there be fraud, accident, or mistake, no evidence in parol can be received to add to, or subtract from, its terms under the guise of proving a collateral agreement. Parol evidence of a collateral agreement to be admissible must not interfere with the terms of the contract, nor must it *add to its obligations*. The verbal collateral agreement must be independent and distinct from the written agreement and must not be inconsistent with it. And it must not be so closely connected with the transaction as to form a part of it. Therefore, whatever is embraced in the writing cannot be nullified, qualified, or added to by the collateral agreement. [Tracy v. Union Iron Works, 104 Mo. 193 (affirming same case 29 Mo. App. 342); Seitz v. Brewers Machine Co., 141 U. S. 510; Slaughter v. Smither, 97 Va. 202, 206; McTague v. Finnegan, 54 N. J. Eq. 454, 460; Naumberg v. Young, 44 N. J. L. 331, 342.] Now a warranty in the sale of personal property is manifestly an important element of the contract. The vendor considers the

presence, or absence, of a warranty as a substantial matter for him to think about in making up his mind whether to sell. Its absence in the writing is a part of the contract, for silence may be as forceful as speech. So it should be clear that when the parties to a written contract of sale omit a warranty, no warranty is made. In Seitz v. Brewers Co., supra, at page 517, Chief Justice FULLER makes a clear statement of the rule in the following language: ''Undoubtedly the existence of a separate oral agreement as to any matter on which a written contract is silent, and which is not inconsistent with its terms, may be proven by parol, if under the circumstances of the particular case, it may properly by inferred that the parties did not intend the written paper to be a complete and final statement of the whole of the transaction between them. But such an agreement must not only be collateral, but must relate to a subject distinct from that to which the written contract applies; that is, it must not be so closely connected with the principal transaction as to form part and parcel of it. And when the writing itself upon its face is couched in such terms as impart a complete legal obligation with-' out any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing.'' In Naumberg v. Young, supra, the Supreme Court of New Jersey makes a similar statement of the rule as follows: ''Where the written contract purports on its face to be a memorial of the transaction, it supersedes all prior negotiations and agreements, and that oral testimony will not be admitted of prior or contemporaneous promises on a subject which is so closely connected with the principal transaction, with respect to which the parties are contracting, as to be part and parcel of the transaction itself, without the adjustment of which the parties cannot be considered as having

finished their negotiations and finally concluded a contract." [See, also, 2 Page on Contracts, Sec. 1222.]

In Thompson v. Libby, 34 Minn. 374, 377, (affirmed in Wheaton R. Mill Co. v. Noye, 66 Minn. 156) the Supreme Court referred to loose statements sometimes made to the effect that where the whole contract is not reduced to writing though it purported to be complete on its face, parol evidence could be admitted to prove the part omitted, and said that: "to allow a party to lay the foundation for such parol evidence by oral testimony that only a part of the agreement was reduced to writing, and then prove by parol the part omitted, would be to work in a circle, and to permit the very evil which the rule was designed to prevent." The court adds that "it is to be presumed that the parties have introduced into it every material item and term; and parol evidence cannot be admitted to add another term to the agreement, although the writing contains nothing on the particular one to which the parol evidence is directed. The rule forbids to add by parol where the writing is silent, as well as to vary where it speaks."

The Court, then, in speaking of an instance where the contract, as in this case, contained a warranty, said (p. 379) that: "The common sense of men would say, and correctly so, that when on a sale of personal property, a warranty is given, it is one of the terms of the sale, and not a separate and independent contract. To justify the admission of a parol promise by one of the parties to a written contract, on the ground that it is collateral, the promise must relate to a subject distinct from that to which the writing relates."

As already intimated, there are cases which have gone so far toward wiping out all protection in a written contract that a reference to them will be of service in showing the extent to which a few of the courts have been led.

In Morgan v. Griffith, L. R. 6 Exchequer Cases 70, was where there was a written lease of land containing the agreement as to rent, the term, etc., and "that the tenant should not shoot, hunt, or sport on the land, but would use his best endeavors to preserve the same, and would allow the landlord, or friends, at any time to hunt, shoot, or sport on the land." The tenant was allowed to offer evidence that there was also a verbal agreement by the landlord to kill "or destroy" the rabbits so that they would not damage the tenant's crops. Erskine v. Adeane, L. R. 8 Ch. App. Cases 756 was the same character of case, with the same ruling.

In Durkin v. Cobleigh, 156 Mass. 108, a vendor, by ordinary deed, conveyed land bounded on a street. The vendee, in an action for damages, was allowed to introduce evidence and maintain an action on an oral agreement, not found in the deed, that the vendor would build and grade the street so as to connect with a certain other street, and that he would cause city water to be put in the street, by a certain time.

In Tennessee (Hines v. Willcox, 96 Tenn. 148), a verbal agreement was allowed as collateral, though there was a written lease. In that case there is found a statement of a number of cases decided in that State, from which it would appear that little security is to be there gained by reducing a contract to writing.

It seems that the fact that a written agreement is silent as to the things proposed to be proved by verbal evidence is considered to be a strong factor in favor of such evidence. Of course, if it were not silent and the writing was complete there would be neither necessity, nor temptation to repeat in words what has already been put down in writing. But it is difficult to understand why silence should be of controlling influence in favor of such evidence. The inevitable effect of such consideration would be to compel one to affirmatively set down in the writing all those things

which he does not agree to do; a task that would baffle the capacity of the most cautious and alert. The reason of the thing is that where a written contract is complete on its face, the omission therefrom of matters said to have formed the collateral agreement, if they are so associated or connected with the transaction as to have been naturally included if intended to be a part of it, is, if it may be so expressed, a silent affirmation that they have not been made a subject of contract; and that is the evident meaning of the United States Supreme Court in Seitz v. Brewers Co., and of the Supreme Court of New Jersey in Naumberg v. Young, supra, as well as the other cases which we have cited.

This rule of evidence is very old. It came into existence from necessity. It recognizes the frailty of men and provides a means for stability of business by lessening the hazards of misunderstanding, real or affected. Two men desire to enter into a contract, each thinks of the other, one, or all, of three things: that he may have a bad memory, a poor understanding, or an easy conscience, which, under temptation, would allow him to commit perjury. Ought it to be said that there is no way whereby they may safely contract? Naturally they resort to a writing; must each labor under the ever present fear that when he calls upon the other for performance, he will be met with a claim that there were things agreed upon verbally, and not mentioned in the writing, which put other obligations upon him, or released obligations due to him. Things, which, in practical effect, destroy the value of his contract.

Mr. Freeman adds a valuable note to Green v. Batson, 5 Am. St. Rep. 194, a case making a distinction (where, perhaps there is none), between a sale of land by deed and a sale of personalty by contract. After reviewing some cases of the character just mentioned, where oral evidence was admitted under the

idea that it was to prove a collateral agreement, he says at the close: "While these cases do not profess to depart from the general rule, which rejects parol evidence when offered to vary or enlarge a written contract, they seem to us to proceed to evade that rule, without suggesting any general test by which to determine when such evasion is proper. In fact, while professing to respect the rule, they refuse to apply it; and if they be judicially sound, we know not when the rule may not be held inapplicable, or whether the existence of the rule ought to be affirmed or denied with more confidence. They furnish additional proof that hard cases 'are the quicksands of the law'; in which quicksands the law is either hidden from sight or smirched beyond recognition."

Plaintiff has furnished us an interesting brief with many citations. It is not possible, within reasonable limits, to enter into a detailed discussion of these, distinguishing them from the case before us. It is quite true that the circumstances, situation and surrounding of the parties often may be shown to help in the interpretation of written contracts which are not clear upon their face. But no such necessity exists as to this contract of warranty. Its terms are specific and not to be misunderstood. So, as already stated parol evidence is admissable to show fraud, accident or mistake in the writing. But nothing of that kind is pretended in fact and no pleading of that kind was filed.

We find ourselves forced to interfere and hence reverse the judgment and remand the cause. All concur.